IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREYER'S GRAND ICE CREAM, INC., | No. 10-00317 CW |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ICD'S MOTION TO DISMISS (Docket No. 10) |
| v. | |
| ICE CREAM DISTRIBUTORS OF EVANSVILLE, LLC and SPIN CITY HOLDINGS, LLC, | |
| Defendants. | |

Plaintiff Dreyer's Grand Ice Cream, Inc. alleges that Defendants Ice Cream Distributors of Evansville, LLC (ICD) and Spin City Holdings, LLC have failed to pay balances due for ice cream products delivered. ICD moves to dismiss Plaintiff's claims. Spin City does not join ICD's motion.[1] Plaintiff opposes the motion. The motion was heard on April 29, 2010. Having considered oral argument and the papers submitted by the parties, the Court GRANTS ICD's motion in part and DENIES it in part.

---

[1] At the time this motion was taken under submission, Spin City had not responded to Plaintiff's complaint. Since then, Spin City has filed a joint answer with ICD.

BACKGROUND

The following allegations are contained in Plaintiff's complaint.

In June, 2004, Defendants ICD and Spin City sought authorization to distribute Plaintiff's ice cream products in parts of Kentucky, Illinois and Indiana. On July 2, 2004, Defendants applied for credit from Plaintiff. By signing the application, Defendants agreed to the following provision:

> Customer agrees to pay all amounts due under this agreement. In the event of non-payment, in addition to the principal amount due, interest on the unpaid balance of 18% per annum or 1.5% per month, reasonable attorney fees and court costs may be assessed.

Compl., Ex. A at 2. Plaintiff[2] sent Defendants a March 3, 2005 letter indicating that it had approved their credit application. The letter stated that Defendants' account had been established under the following terms: "Open terms/Net 10 days." Compl., Ex. A at 3. The letter also explained that Defendants' payments were "due ten days from the date of invoice." Compl., Ex. A at 3.

Over the period that Defendants distributed Plaintiff's products, they accrued a balance due of $233,081.21. Plaintiff sent Defendants a final invoice on January 19, 2006. Defendants' payment on this invoice was due no later than January 29, 2006. Defendants did not remit payment.

Plaintiff filed its complaint on January 22, 2010. It brings a claim for breach of contract and, in the alternative, claims for

---

[2] Although the letter states that "Edy's Grand Ice Cream" extended the credit to Defendants, it carries Plaintiff's letterhead.

2

an account stated, on an open book account and for goods sold and delivered.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

## DISCUSSION

ICD argues that Plaintiff's claims must be dismissed because they are time-barred by California's four-year statute of

3

limitations.  In the alternative, ICD challenges the sufficiency of Plaintiff's allegations.

I.   Claim for Breach of Contract

    A.   Statute of Limitations

Under California law, a claim "upon any contract, obligation or liability founded upon an instrument in writing" must be brought within four years from the date that the claim accrues.  Cal. Civ. Proc. Code § 337(1).

Plaintiff bases its breach of contract claim on its credit agreement with ICD.  Under the agreement, ICD agreed to "pay all amounts due" and, in a follow up letter, ICD was informed that it must make payment within "ten days from the date of invoice."  Compl., Ex. A at 2-3.

Plaintiff alleges that ICD has an outstanding balance of $233,081.21, which appears to be the sum of amounts due on multiple invoices.  In its complaint, Plaintiff identifies only one invoice,[3] due on January 29, 2006, which falls within the limitations period.  This invoice can therefore support Plaintiff's breach of contract claim.  However, Plaintiff cannot recover for other unpaid invoices unless the limitations period for them did not begin to run until January 22, 2006 or thereafter.

Plaintiff argues that the statute of limitations was tolled as to these invoices until January 29, 2006, the date ICD's final invoice was due.  Citing Romano v. Rockwell International, Inc., 14 Cal. 4th 479 (1996), Plaintiff maintains that it was entitled to

---

[3] In its opposition brief, Plaintiff asserts that this invoice was for $34,392.58.  Opp'n at 3.

4

wait until ICD failed to pay this last bill before treating ICD as having breached the credit agreement.  In Romano, an employee plaintiff alleged that his employer terminated his employment without good cause in violation of a purported implied contract. Id. at 488.  The parties disputed whether the alleged contract was breached when the employer notified the plaintiff that his employment would be terminated or when his employment was actually terminated.  Id. at 488-91.  In laying out the relevant legal principles, the court stated that

> whether the breach is anticipatory or not, when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract.

Id. at 489.  It explained that, in cases involving "successive breaches of a continuing contractual obligation, . . . 'where the parties did not mutually abandon or rescind [the contract] upon a breach or successive breaches, the injured party could wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches.'"  Id. at 490 (quoting Lambert v. Commonwealth Land Title Ins. Co., 53 Cal. 3d 1072, 1078 (1991)).  Thus, assuming that the implied contract existed, the court concluded that the duty to terminate the plaintiff's employment only for good cause "would constitute an ongoing obligation, and the plaintiff would have the right to elect whether to rely on the contract despite an initial breach -- even assuming the announcement of termination were regarded as constituting a present breach."  Romano, 14 Cal. 4th at 490.

Because the plaintiff chose to continue working under the purported contract, despite the employer's alleged initial breach, the court held that the limitations period began at the time the plaintiff's employment was actually terminated, not at the time of notification.  Id. at 491.  The court explained that the plaintiff's decision tolled "the running of the statute of limitations until termination, because [he] continued to perform and accept compensation until the time of actual termination, reflecting an election to treat the contract as still in effect." Id. at 490.

Here, despite ICD's non-payment, Plaintiff apparently chose to continue extending credit to ICD under the agreement until January 29, 2006.  In doing so, as in Romano, Plaintiff gave ICD the opportunity to cure its earlier defaults on its obligation to pay, while both ICD and Plaintiff treated the contract as in effect. See Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc., ___ F. Supp. 2d ___, 2010 WL 668063, at *6 (N.D. Cal.) (discussing Romano).  When ICD failed to pay the final bill, Plaintiff then elected to treat the breach as terminating the credit agreement.  Under Romano, Plaintiff was entitled to wait until January 29, 2006 to do so.

ICD attempts to distinguish Romano, arguing that there was no ongoing contractual obligation because it "was not obligated to receive a pre-set amount of product from Dreyer's."  Reply at 3. Although this may be true, it is irrelevant; Plaintiff and ICD contracted for credit, not products.  Under the agreement, ICD was obliged to pay amounts due for goods received, not to purchase

6

goods. The fact that it did not buy products would not have relieved it of paying for debts previously incurred. Indeed, ICD continued to receive goods pursuant to the credit agreement, even though it was defaulting on its duty to pay. To allow ICD to assert a statute of limitations defense, notwithstanding its conduct suggesting that the contract remained in force, would lead to an inequitable result.

ICD also appears to suggest that the purchase resulting in the January 16, 2006 invoice was not made pursuant to the credit agreement. It points out that, in a prior case before this Court, Plaintiff represented that, after December 30, 2005, ICD purchased "Dreyer's ice cream products via cash on delivery or wire transfer to service only its Walgreen's account." ICD's Request for Judicial Notice (RJN),[4] Ex. A at 5. However, this representation is not necessarily inconsistent with Plaintiff's allegation that the invoice was based on a purchase on ICD's credit account.

The statute of limitations on Plaintiff's breach of contract claim did not begin to run until January 29, 2006. Accordingly, by filing its complaint on January 22, 2010, Plaintiff timely initiated its claim.

---

[4] ICD requests judicial notice of documents filed by Plaintiff in a prior action before this Court between Plaintiff and ICD. See generally Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distributors of Evansville, 07-0140 CW (N.D. Cal.). Plaintiff does not oppose the request. Because the fact that Plaintiff made these statements in its earlier papers is not subject to reasonable dispute, the Court grants ICD's request. See Fed. R. Evid. 201.

7

B.  Sufficiency of Pleadings

To assert a cause of action for breach of contract, a plaintiff must plead: (1) existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach.  Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004).

ICD argues that Plaintiff cannot rely on its credit agreement for its breach of contract claim because it "does not state that any particular amount is supposed to be paid by ICD."  Reply at 2.  ICD maintains that the only enforceable contracts "are the actual invoices detailing amounts supposedly due."  Reply at 2.  This argument is unavailing.  According to the complaint, the invoices were issued pursuant to the credit agreement.  The letter notifying ICD of the approval of its application stated invoices were to be paid within ten days of receipt.  ICD does not argue that it objected to this term.  Thus, taking these documents together, Plaintiff sufficiently pleads that its credit agreement is an enforceable contract.  Cf. Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.")

ICD also asserts that Plaintiff fails to state a claim because it "provides no facts as to when its final delivery of ice cream products to ICD occurred . . . ."  Mot. at 4.  No such pleading is required.  Plaintiff avers that it extended credit and delivered its products pursuant to the agreement, which triggered ICD's duty

8

to pay within ten days of receiving an invoice.  Plaintiff also avers that it has suffered damage as a result of ICD's failure to pay.  These allegations sufficiently support Plaintiff's claim for breach of contract.

II. Claims for Account Stated, on an Open Book Account and for Goods Sold and Delivered[5]

A. Statute of Limitations

A four-year limitations period applies to actions "(1) upon a book account whether consisting of one or more entries; (2) upon an account stated based upon an account in writing, but the acknowledgment of the account stated need not be in writing; (3) a balance due upon a mutual, open and current account, the items of which are in writing."  Id. § 337(2).  In such actions, "where an account stated is based upon an account of one item, the time shall begin to run from the date of said item, and where an account stated is based upon an account of more than one item, the time shall begin to run from the date of the last item."  Id.; see also R.N.C. Inc. v. Tsegeltos, 231 Cal. App. 3d 967, 972 (1991) (stating that the four-year limitations period "on a book account begins as of the last entry in the book account").  Thus, a party may recover for items entered into the account outside the limitations period, provided the account's last entry falls within it.  Rosati v. Heimann, 126 Cal. App. 2d 51, 56 (1954) ("It follows that the

---

[5] Plaintiff appears to plead these claims as an alternative to its breach of contract claim.  See McBride v. Boughton, 123 Cal. App. 4th 379, 388 (2004); Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1396 n.9 ("Under California law, however, moneys due under an express contract cannot be recovered in an action on an 'open book account' in the absence of a contrary agreement between the parties.").

9

action may include items entered more than the statutory period prior to the entry of the last item.")

Because Plaintiff filed its complaint on January 22, 2010, these claims may proceed to the extent that they accrued or involve accounts in which the last entry was dated on or after January 22, 2006.

B. Claim for Account Stated

To state a claim for an account stated, a plaintiff must plead "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied,to pay the amount due." Zinn v. Fred R. Bright Co., 271 Cal. App. 2d 597, 600 (1969); see also Sandy v. McClure, 676 F. Supp. 2d 866, 880 (N.D. Cal. 2009) (citing Zinn).

Plaintiff pleads previous transactions between it and ICD, satisfying the first prong of this claim. Plaintiff also alleges that, under the credit agreement, ICD agreed to pay amounts due. However, Plaintiff does not plead facts to suggest that ICD expressly agreed that it owed $233,081.21.[6]

Plaintiff appears to conflate the promise to pay with an agreement over the amount due, an issue addressed in Zinn. There, although prior transactions between the parties had been established and evidence demonstrated a promise by defendant to pay

---

[6] Plaintiff avers that "the sum of $233,081.21, plus interest was found to be due Dreyer's, which sum ICD and Spin City agreed and promised to pay." Compl. ¶ 18. However, Plaintiff does not plead facts to support such an agreement on the amount.

10

1  the plaintiff a bonus, it was not clear whether the parties agreed
2  on the amount due.  The court stated,

> The agreement of the parties necessary to establish an
> account stated need not be express and frequently is
> implied from the circumstances.  In the usual situation,
> it comes about by the creditor rendering a statement of
> the account to the debtor.  If the debtor fails to object
> to the statement within a reasonable time, the law
> implies his agreement that the account is correct as
> rendered.

Zinn, 271 Cal. App. 2d at 600 (citation omitted); see also Maggio, Inc. v. Neal, 196 Cal. App. 3d 745, 753 (1987) (stating that in an action for an account stated, the "key element in every context is agreement on the final balance due").  Thus, in order to recover for an account stated, a plaintiff must show either an express or implied agreement on the amount due.

Because Plaintiff does not plead an express acknowledgment by ICD, it must allege an implicit agreement on amounts owed.  ICD's failure to object to amounts on Plaintiff's invoices can establish such an implied agreement.  ICD does not argue that it objected to the amount on any invoice and thus, on this motion, it appears to have agreed implicitly that it owed $233,081.21.  Plaintiff therefore states a claim for an account stated.

C.   Claim on an Open Book Account

California law defines a book account as

> a detailed statement which constitutes the principal
> record of one or more transactions between a debtor and a
> creditor arising out of a contract or some fiduciary
> relation, and shows the debits and credits in connection
> therewith, and against whom and in favor of whom entries
> are made, is entered in the regular course of business as
> conducted by such creditor or fiduciary, and is kept in a
> reasonably permanent form and manner and is (1) in a
> bound book, or (2) on a sheet or sheets fastened in a
> book or to backing but detachable therefrom, or (3) on a

11

>       card or cards of a permanent character, or is kept in any
>       other reasonably permanent form and manner.

Cal. Civ. Proc. Code § 337a.  A claim on an open book account, as with other common counts, is proper "whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished." Kawasho Int'l, U.S.A. v. Lakewood Pipe Svc., Inc., 152 Cal. App. 3d 785, 793 (1983); see also Gross Belsky Alonso LLP v. Henry Edelson, 2009 WL 1505284, at *7 (N.D. Cal.).  Such a claim is "on the entire account and not upon the separate items."  Rosati, 126 Cal. App. 2d at 56.

Plaintiff pleads that, within the past four years, ICD has become indebted to it "on an open book account for money due in the sum of at least $233,081.21 . . . ."  Compl. ¶ 21.  Plaintiff's claim on an open book account may go forward to the extent that the account meets the requirements under section 337a and the last entry contained therein is dated on or after January 22, 2006.

D. Claim for Goods Sold and Delivered

Plaintiff pleads that, within the past four years, ICD has "become indebted to Dreyer's for ice cream products sold and delivered in the sum of at least $233,081.21, plus interest, for which ICD and Spin City agreed to pay the above sum."  Compl. ¶ 24.  However, Plaintiff does not plead that goods were actually sold and delivered on or after January 22, 2006.  This claim is accordingly dismissed with leave to amend.  Because Plaintiff has sufficiently stated its breach of contract and other common law claims, it may forgo amending its complaint.

12

CONCLUSION

For the foregoing reasons, ICD's motion to dismiss is granted in part and denied in part. (Docket No. 10.) The Court's holdings are summarized as follows:

1. Plaintiff's claim for breach of contract may proceed based on its invoice of January 19, 2006, which was due on January 29, 2006. To the extent that the claim rests on invoices due before January 22, 2006, the Court concludes that the statute of limitations did not begin to run until Plaintiff failed to pay for its last invoice.

2. Plaintiff's states a claim for account stated based on its invoice of January 19, 2006, which was due on January 29, 2006.

3. Plaintiff's claim on a book account may go forward to the extent that the account meets the requirements of section 337a and the last entry on the alleged account is dated on or after January 22, 2006.

4. Plaintiff's claim for goods sold and delivered is dismissed with leave to amend to plead facts indicating that the goods were actually sold and delivered on or after January 22, 2006.

Within fourteen days from the date of this Order, Plaintiff may file an amended complaint to re-plead its claim for goods sold and delivered. If Plaintiff does so, Defendants may file a motion to dismiss two weeks thereafter, with Plaintiff's opposition due one week following and Defendants' reply due one week after that.

13

1  The motion will be decided on the papers.
2        IT IS SO ORDERED.
3
4  Dated:  May 14, 2010
   _____
5  CLAUDIA WILKEN
   United States District Judge